## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NATIONAL MULTI HOUSING COUNCIL, :
in a representational capacity on behalf of     :
certain of its members,                          :
1850 M Street, N.W., Suite 540                   :
Washington, D.C. 20036                           :
                                                 :
NATIONAL APARTMENT                               :
ASSOCIATION, in a representational               :
capacity on behalf of certain of its members, :
4300 Wilson Boulevard, Suite 400                 :
Arlington, VA 22203                              :
                                                 :      Civil Action No.
                          Plaintiffs,            :
                                                 :
          - against -                            :
                                                 :
ALPHONSO JACKSON,                                :
in His Official Capacity as Secretary of         :
Housing and Urban Development,                    :
451 7th Street, S.W.                             :
Washington, D.C. 20410                           :
                                                 :
UNITED STATES DEPARTMENT OF                      :
HOUSING & URBAN DEVELOPMENT,                     :
451 7th Street, S.W.                             :
Washington, D.C. 20410                           :
                                                 :
                          Defendants.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, through undersigned counsel, respectfully allege as follows:

## INTRODUCTION AND SUMMARY OF THIS ACTION

1.    Plaintiffs, national organizations representing owners and managers of federally-funded apartments, seek relief on behalf of certain of their members from Final Guidance promulgated by the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT ("HUD") that unlawfully imposes on those members an obligation to communicate with tenants and potential tenants in an unlimited number of foreign languages. Executive agencies may act only pursuant to authority specifically granted to them by the United States Congress. In this case, Congress has passed no law authorizing federal agencies to require apartment owners and managers to communicate with individuals of limited English proficiency ("LEP persons") in the LEP person's language of choice. Nevertheless, HUD has imposed such a requirement by declaring that a failure to do so constitutes discrimination on the basis of national origin. Accordingly, HUD's new requirements are in excess of and contrary to its statutory authority and are arbitrary and capricious.

## THE PARTIES

2.    Plaintiff NATIONAL MULTI HOUSING COUNCIL ("NMHC" or the "Council") is an industry trade group that represents over 1,000 multi family housing developers, owners, managers and financiers. The NMHC advises and assists its members primarily with respect to legislative and regulatory matters. It also represents its members regarding issues of concern to the multi

family housing industry, including HUD's new language requirements. The NMHC brings this suit on behalf of certain of its members who have suffered and are continuing to suffer injury as a direct result of HUD's new language requirements. These members' individual interests in serving their tenants and potential tenants unfettered by unlawful language requirements are germane to the NMHC's organizational purpose.

3.     Plaintiff NATIONAL APARTMENT ASSOCIATION ("NAA") is an industry trade group with 188 state and local affiliates representing over 51,000 multi family housing companies. In addition to providing members with legislative and regulatory guidance, the NAA provides education and training opportunities to both multi site managers and on-site staff. Like the NMHC, the NAA also represents its members with respect to issues of concern to the multi family housing industry. The NAA brings this suit on behalf of certain of its members who have suffered and are continuing to suffer injury as a direct result of HUD's new language requirements. These members' individual interests in serving their customers unfettered by unlawful language requirements are germane to the NAA's organizational purpose.

4.     Defendant ALPHONSO JACKSON is the Secretary of HUD. As Secretary, he is responsible for the new requirements challenged herein. He is sued here in his official capacity.

5.     Defendant HUD is an agency empowered through delegation from Congress with responsibilities for implementing Title VI. On March 7, 2007,

3

Defendant HUD issued Final Guidance to Federal Financial Assistance Recipients

Regarding Title VI Prohibition Against National Origin Discrimination Affecting

Limited English Proficient Persons (the "Final Guidance").

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this

action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1346(a)(2) (civil action

against the United States).  This Court has authority to grant the requested relief

under 28 U.S.C. §§ 2201-02 and 5 U.S.C. § 702.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C.

§§ 1391(e)(1) and 1391(e)(2).

## FACT ALLEGATIONS

### Federally Subsidized Low-Income Housing

8.      Certain of the NAA's and the NMHC's members receive

federal funds from HUD in the form of project-based grants (the "Members").  These

members rely on federal funds to offset the difference between the discounted rents

charged to customers for subsidized units in their housing complexes and the market

prices for such units.

### Federal Regulatory Framework

9.      As recipients of federal funds, the Members are subject to

formal regulations and guidance promulgated by HUD, pursuant to Title VI of the

Civil Rights Act of 1964 ("Title VI").  Title VI and Title VI regulations prohibit

4

recipients of federal financial assistance ("recipients") from discriminating against

customers or potential customers based on their race, color, or national origin.

10.    Title VI provides that:

No person in the United States shall, on the ground
of race, color, or national origin, be excluded from
participation in, be denied the benefits of, or be
subjected to discrimination under any program or
activity receiving Federal financial assistance.  42
U.S.C. § 2000d.

11.    HUD's Title VI implementing regulations state that:

No person in the United States shall, on the ground
of race, color, or national origin, be excluded from
participation in, be denied the benefits of, or be
otherwise subjected to discrimination under any
program or activity to which this Part 1 applies.  24
C.F.R. § 1.4(a).

12.    HUD's implementing regulations also state that:

A recipient…may not, directly or through
contractual or other arrangements, utilize criteria or
methods of administration which have the effect of
subjecting persons to discrimination because of
their race, color, or national origin….  24 C.F.R. §
1.4(b)(2)(i).

13.    On August 11, 2000, President William Jefferson Clinton

issued Executive Order 13166, entitled "Improving Access to Services for Persons

with Limited English Proficiency" (the "Executive Order").  65 Fed. Reg. 50121

(Aug. 11, 2000).  The Executive Order, which purports to assist federal agencies in

enforcing Title VI, requires every federal agency that provides financial assistance to

non-federal entities to publish guidance outlining recipients' obligations to provide

meaningful access to LEP persons.  It also directs effected agencies to make the

required guidance consistent with model guidance issued by the Department of

Justice and describes the model guidance as outlining the standards that recipients
"must follow." *Id.*

### HUD's Final Guidance

14.    In response to President Clinton's Executive Order, on March
7, 2007, HUD effectuated Final Guidance to Federal Financial Assistance Recipients
Regarding Title VI Prohibition Against National Origin Discrimination Affecting
Limited English Proficient Persons (the "Final Guidance"). 72 Fed. Reg. 2732 (Jan.
22, 2007). The Final Guidance equates communicating exclusively in English with
national origin discrimination and requires recipients, including the Members, to
provide translations of information to LEP tenants and potential tenants free of
charge.

15.    The Final Guidance identifies two "main ways" to provide the
translation services that it requires:  (i) hiring professional interpreters to act as
intermediaries between the Members and LEP persons and (ii) distributing written
translations of vital documents.  72 Fed. Reg. at 2741.

16.    In particular, recipients are required to provide "competent"
and "proficient" translators for *each* language spoken by their tenants and potential
tenants, no matter how few the number of tenants and potential tenants who
communicate in that language.  72 Fed. Reg. at 2742.  The provision of oral
translations must also be "timely." *Id.*

17.     The Final Guidance also requires recipients to provide written translations of "vital" documents. The term "vital documents" is broadly defined as documents that are generic and widely used. 72 Fed. Reg. at 2744.

18.     A HUD Assistant General Counsel stated at a February 28, 2007 public meeting to explain the requirements to Members and other interested parties that the requirement for written translations also applies to "one time" notices posted in the Members' buildings.

19.     Prior to providing the translation services, federally-funded apartment owners and managers must subject themselves to a vague and ambiguous four-part test to determine the number of languages in which they must communicate, the specific information to be translated and the mix of oral and written translations to be provided.

20.     The four factors in the test are (1) the number or proportion of LEP persons eligible to be served or likely to be encountered by the program or grantee; (2) the frequency with which LEP persons come in contact with the program; (3) the nature and importance of the program, activity, or service provided by the program to people's lives; and (4) the resources available to the grantee/recipient and costs. 72 Fed. Reg. at 2734. According to the Final Guidance, the correct mix of oral and written translations "should be based on what is both necessary and reasonable in light of the four-factor analysis." *Id.* at 2741.

21.     Recipients are instructed to determine the number or proportion of LEP persons eligible to be served by them by studying census data for

the area served, data from school systems and community organizations, and data from state and local governments.

22.    Finally, the Final Guidance requires recipients to develop a Language Assistance Plan ("LAP") that summarizes the results of the four-part test and the translation services provided by the recipient.

## Specific Allegations of HUD Wrongful Conduct

23.    On behalf of the Members, Plaintiffs allege that the Final Guidance is unlawful and unenforceable for at least three reasons.

24.    HUD has acted in *excess of and contrary to HUD's statutory authority.* Title VI and HUD's implementing regulations prohibit only discrimination based on race, color, or national origin. The four-part test and the requirement to provide language services outlined in the Final Guidance do not address discrimination based on race, color, or national origin. Instead, they address discrimination based on English fluency. Several federal courts have made clear that Title VI does not prohibit communicating only in English and does not equate such conduct with national-origin discrimination.

25.    HUD has acted in excess of and contrary to its authority under Title VI because the Final Guidance unlawfully expands the scope of Title VI to prohibit conduct that has a disparate impact on LEP individuals. Title VI permits HUD to proscribe only intentional discrimination, not policies or priorities that have a disparate impact.

26.    HUD has acted *contrary to law* by promulgating regulations that prohibit conduct that does not constitute intentional discrimination but that has a disparate impact on individuals based on their English fluency, notwithstanding that Title VI prohibits only intentional discrimination based on race, color, or national origin.

27.    HUD has acted *arbitrarily and capriciously*. Even if the court were to rule that Title VI prohibits conduct that has a disparate impact on LEP persons, the regulation is unlawful because it is vague and ambiguous, as well as unreasonable. Indeed, the Final Guidance provides no standards for compliance and thus effectively requires translations for every message into all of the languages spoken or written by the Members' tenants and potential tenants. Compliance with such a requirement is prohibitively expensive and infeasible. The Final Guidance also forces apartment owners to implement costly written and oral translation services without providing alternatives to compliance. Nor does the regulation protect the Members from tort liability in cases where the translations provided by them result in financial or physical harm to their tenants. Thus, the Members must somehow find a way to translate every message into scores of languages, many of which are obscure, and yet they face liability if any of the translations are inaccurate.

## INJUNCTIVE AND DECLARATORY RELIEF ALLEGATIONS

### The Final Guidance Establishes New And Unlawful Obligations For the Members

28.    HUD purports to rely upon Title VI, HUD's own Title VI regulations, and Executive Order 13166, as authorization for the requirements in the Final Guidance.

29.    According to HUD, the Final Guidance is intended to assist recipients with fulfilling their previously existing obligation under Title VI to provide meaningful access by LEP persons to important programs and services. In reality, however, the requirements in the Final Guidance are new and unlawful.

30.    First, the plain language of Title VI prohibits only discrimination based on race, color, or national origin. Furthermore, the legislative history of Title VI and HUD's own implementing regulations make no reference to fluency in English. Accordingly, failing to provide translation services for all of the languages spoken or written by tenants and potential tenants does not constitute national origin discrimination by the Members under Title VI and HUD's Title VI regulations. In the same manner, Title VI does not permit HUD to equate a person's fluency in English with his or her national origin.

31.    Second, prior to the issuance of the Executive Order, HUD had made no reference in any regulation nor in any other official document to any responsibility by recipients to provide meaningful access to LEP persons under Title VI or its Title VI implementing regulations. After the issuance of the proposed

guidance, however, but before the guidance became final, HUD required applicants

for HUD grants to comply with the specific terms of the proposed guidance. Notice

of Funding Availability for Community Development, 69 Fed. Reg. 60478 (Oct. 8,

2004).

32.    Third, Title VI prohibits only intentional discrimination. The

Final Guidance, however, permits HUD to cut off federal funding to the Members

without a finding of intentional discrimination. The Final Guidance thus unlawfully

imposes a "disparate impact" standard of liability on recipients' actions.

### The Final Guidance Is Infeasible And Includes
### No Standards for Compliance

33.    The proper balance of oral and written services is not

meaningfully addressed by the Final Guidance. The Final Guidance states that "[t]he

correct mix [of oral and written interpretations] should be based on what is both

necessary and reasonable in light of the four-factor analysis." 72 Fed. Reg. at 2741.

34.    The Final Guidance leaves many other questions unanswered.

For example, the Final Guidance states that translating information into 100 different

foreign languages "is unrealistic." 72 Fed. Reg. 2744. The Final Guidance does not

state what number of foreign languages HUD expects the Members to translate

documents into. Furthermore, the Final Guidance states unequivocally that oral

interpreters should be provided to LEP persons "no matter how few LEP persons the

recipient is serving." *Id.* at 2736.

35.    Providing professional translators for all of the languages spoken by tenants and potential tenants is extremely expensive for the Members. Professional translators are often competent and proficient in only one language other than English and are usually difficult to find for the most uncommon languages. Despite the high cost of complying with the requirement, however, the Final Guidance advises recipients against relying on family members or friends for oral interpretive services and instead instructs recipients to provide "competent" and "proficient" interpreters. *Id.* at 2745.

36.    Similarly, the Final Guidance does not provide a standard for the "timely" provision of translators. The Members are thus forced to choose to their potential detriment between hiring translators to remain on-site in each building or within a City center, or on retainer for expedited service as needs arise. In any case, the provision of translators is more expensive the more "timely" HUD requires them to be provided. For these reasons, HUD's oral translation requirement unfairly and unlawfully burdens the Members.

### Compliance is Mandatory and Will Cause Irreparable Harm To The Members

37.    HUD requires the Members to comply with the Final Guidance. In particular, the Final Guidance makes clear that HUD "will" use the Final Guidance in evaluating whether the Members are in compliance with Title VI. 72 Fed. Reg. at 2738. Furthermore, Executive Order 13166 states unconditionally that recipients "must follow" the compliance standards set forth in the Department of

Justice guidance that serves as the model for HUD's Final Guidance. 65 Fed. Reg. at 50121. The Final Guidance thus serves as final agency action.

38.    Members are already attempting to comply with the Final Guidance. Indeed, Members have spent a substantial amount of money subjecting themselves to the required four-part test. In particular, Members have studied, at great expense, census data for all locations currently under management to attempt to determine the number of languages spoken by their tenants and potential tenants and the frequency with which their employees come in contact with LEP tenants and potential tenants. Members have also developed Language Assistance Plans for serving their LEP tenants and potential tenants and complying with the new requirements.

39.    While many Members made significant efforts prior to the issuance of the Final Guidance to provide translation services to speakers of the most prominent foreign languages, they determined that it was economically infeasible to provide translation services for all of the languages spoken by their tenants and potential tenants.

40.    HUD now effectively requires translation services to be provided to speakers of all of the languages spoken by the Members' tenants and potential tenants. One Member in particular serves tenants who speak at least 24 languages, including such languages as French Creole, Tagalog, three dialects of Chinese, Hindi, Myanmar, Serbo-Croatian, Cambodian, Amharic, Swahili, and Kenyan. Another Member serves tenants who speak at least 15 different languages.

With respect to potential tenants, compliance with this requirement is even more difficult, as Members may encounter applicants who speak additional languages for whom they must quickly provide translation services without warning.

41.    In addition, there are as many as 115 "vital" documents the Members are required to interpret into the foreign languages spoken by their tenants, including such documents as the application, the lease, the Fair Housing notice, the Lead Paint notice, each apartment building's Rules and Regulations, maintenance request forms, and maintenance action confirmations.

42.    Compliance with the Final Guidance would also irreparably harm Members' reputations. If Members are required to expend more and more resources attempting to comply with the Final Guidance, they will be forced to devote fewer and fewer resources to other services that appeal more broadly to their tenants, regardless of language proficiency. Accordingly, Members who devote resources to translation services may witness English proficient tenants seeking housing elsewhere.

43.    Without declarative and injunctive relief from this Court, Members will continue to expend substantial resources attempting to comply with the Final Guidance and will suffer reputational harm.

14

## FIRST CAUSE OF ACTION

### [Agency Action in Excess of Statutory Authority]

44.    The NMHC and the NAA, on behalf of the Members, repeat, reallege, and incorporate each of the allegations set forth above as if each were set forth herein.

45.    The United States Department of Housing and Urban Development has issued final agency action requiring the Members to provide their tenants and potential tenants with translations of information in an undisclosed and indeterminable number of languages.

46.    Congress has never conferred upon HUD the authority, either explicit or implicit, to issue Final Guidance requiring the Members to provide translation services to LEP persons.

47.    HUD's effectuation of such Final Guidance is in excess of its statutory authority, and therefore in violation of 5 U.S.C. § 706(2)(C).

## SECOND CAUSE OF ACTION

### [Agency Action Contrary to Law]

48.    The NMHC and the NAA, on behalf of the Members, repeat, reallege, and incorporate each of the allegations set forth above as if each were set forth herein.

49.    Pursuant to its authority under Title VI, HUD may prohibit only intentional discrimination on the basis of race, color or national origin.

50.     Contrary to Title VI, HUD has effectuated Final Guidance that requires the Members to communicate with tenants and potential tenants in foreign languages so as to avoid effecting a disparate impact on individuals based on their fluency in English.

51.     By requiring the Members to take action that is not authorized by statute, HUD has acted arbitrarily and capriciously, abused its discretion, acted in a fashion that is not in conformance with the law, and therefore has violated 5 U.S.C. § 706(2)(A).

### THIRD CAUSE OF ACTION

### [Arbitrary and Capricious Agency Action]

52.     The NMHC and the NAA, on behalf of the Members, repeat, reallege, and incorporate each of the allegations set forth above as if each were set forth herein.

53.     HUD has required the Members to translate oral and written communications with their tenants and potential tenants into an undisclosed and indeterminable number of foreign languages.

54.     HUD has made it prohibitively expensive and infeasible for the Members to comply with the Final Guidance because it has provided insufficient guidance as to the number of foreign languages in which they must communicate and the information they must communicate in those foreign languages.

55.     HUD has required the Members to provide costly interpretive services without standards for proving compliance or alternatives to compliance.

16

The Final Guidance also provides no protection to the Members from tort liability for the translations they are required to provide.

56.    HUD has not sufficiently justified the requirement that the Members provide language services.  Such a requirement did not exist prior to the effectuation of the Final Guidance.

57.    By thus making it infeasible for the Members to comply with or prove compliance with the Final Guidance and failing to sufficiently justify its requirements, HUD has abused its discretion and has acted in a way that is arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

WHEREFORE, the NMHC and the NAA, on behalf of the Members, demand judgment as follows:

*First*, awarding the NMHC and the NAA, on behalf of the Members, a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, that

(a)    HUD acted unlawfully in this case because it is without statutory authority to issue the Final Guidance unless such Final Guidance furthers Title VI's prohibition against intentional discrimination based on race, color or national origin;

(b)    HUD has acted unlawfully and has abused its discretion in this case because it is contrary to law to prohibit action that effects a disparate impact on

17

individuals based on their fluency in English and does not constitute intentional discrimination based on race, color or national origin;

      (c)    HUD has acted unlawfully in this case by arbitrarily and capriciously requiring the Members to provide language services; and

      (d)    HUD has acted unlawfully, and arbitrarily and capriciously in this case by making it prohibitively expensive and infeasible for the Members to comply with the Final Guidance, by not formulating standards of compliance, and by not sufficiently justifying the requirements in the Final Guidance.

*Second*, granting permanent injunctive relief enjoining HUD from enforcing the Final Guidance and from equating limited English proficiency with national origin for purposes of enforcing Title VI and Title VI regulations.

*Third*, awarding the NMHC and the NAA their fees and costs incurred in bringing this action; and

*Fourth,* granting the Members such other relief as this Court may deem just

and proper.

Respectfully submitted,

Andrew L. Sander (D.C. Bar No. 387825)
Joseph L. Barloon (D.C. Bar No. 459626)
Austin K. Brown (D.C. Bar No. 499915)
SKADDEN, ARPS, SLATE,
     MEAGHER & FLOM, LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

**COUNSEL FOR PLAINTIFFS**

Dated:  May 3, 2007

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| National Multi Housing Council and National Apartment Association | Alphonso Jackson and U.S. Department of Housing and Urban Development |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   11001 (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) Andrew L. Sandler Skadden, Arps, Slate, Meagher and Flom LLP 1440 New York Avenue, NW Washington, DC  20005-2111 (202) 371-7000 | ATTORNEYS (IF KNOWN) |
|---|---|

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.  Antitrust**

☐ 410 Antitrust

○ **B.  Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

◉ **C.  Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.  General Civil (Other)**        OR        ○ **F.  Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 U.S.C. § 706. Agency action in excess of statutory authority and arbitrary and capricious agency action.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** ⌐ ¬ Check YES only if demanded in complaint<br>**JURY DEMAND:**    YES ☐    NO ☒ |
|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  5/3/07    SIGNATURE OF ATTORNEY OF RECORD  *Andrew L. Sandler*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.